**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 20, 2016**

# In the Court of Appeals of Georgia

A16A0507. NINE TWENTY, LLC et al. v. BANK OF THE OZARKS.

MCFADDEN, Judge.

This appeal concerns the liability of Donald and Evelyn Ray on their guaranties of certain notes. The Rays argue that the action is barred because the lender failed to seek confirmation of the foreclosure sales of the property securing the notes. But when they executed those guaranties, the Rays waived this condition precedent. The Rays also argue that the amount of the judgment against them is incorrect. We disagree. We therefore affirm the trial court's grant of summary judgment to the appellee, Bank of the Ozarks. We deny Bank of the Ozarks' motion to dismiss the appeal as moot.

1. *Facts*.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant." *HWA Properties v. Community & Southern Bank*, 322 Ga. App. 877, 878 (746 SE2d 609) (2013) (citation omitted).

So viewed, the record shows the following undisputed, relevant facts. The predecessor to the Bank of the Ozarks extended loans to Nine Twenty, LLC and Donald Ray & Associates, Inc. Donald and Evelyn Ray guarantied the notes. The companies defaulted, and the bank foreclosed on the properties securing the notes. It did not seek confirmation of the foreclosure sales.

The bank filed this action against the companies and the Rays for the balance due on the notes and under the guaranties. The bank and the Rays filed cross motions for summary judgment. The trial court granted the bank's motion and denied the Rays' motion. This appeal followed.

2. *The failure to confirm the foreclosure sales*.

On appeal the Rays argue that confirmation of the foreclosure sales was a condition precedent to the bank's filing this action. They concede that our Supreme

Court's decision in *PNC Bank, Nat. Assn. v. Smith*, __ Ga. __ (__ SE2d __) (Case No. S15Q1445, decided Feb. 22, 2016), which was decided while this appeal was pending, is dispositive. In that case, our Supreme Court held that "a lender's compliance with the requirements contained in OCGA § 44-14-161[, which requires confirmation of a foreclosure sale before a lender may seek a deficiency judgment,] is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted." Id. at __ (2). But, the court also held that "a guarantor can waive the condition precedent requirement of the confirmation statute by virtue of waiver clauses in the loan documents." Id. __ (3). And here, the Rays do not dispute that their guaranties included such waiver clauses. Indeed, those waiver clauses, which are set out in full in the margin,[1] are

[1] "1. No act or thing need occur to establish the liability of the Undersigned hereunder, and no act or thing, except full payment and discharge of all indebtedness, shall in any way exonerate the Undersigned or modify, reduce, limit or release the liability of the Undesigned hereunder.

. . .

4. The liability of the undersigned hereunder shall be limited to a principal amount of $ *Unlimited* (if unlimited or if no amount is stated, the Undersigned shall be liable for all indebtedness, without any limitation as to amount), plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto.

Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Undersigned hereunder. *The Lender may apply any sums received by or available to Lender on account of the Indebtedness from Borrower or any other person (except the Undersigned), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts shall not reduce, affect or impair the liability of the Undersigned . . . .*

6. … *The liability of the Undersigned shall not be affected or impaired by any of the following acts or things* (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty, without notice to or approval by the Undersigned): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all indebtedness; … (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or *any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness;* (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security, or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) *any foreclosure or enforcement of any collateral security[.]*

7. *The Undersigned waives any and all defenses: claims and discharges of Borrower, or any other obligor pertaining to Indebtedness, except the defense of discharge by payment in full.* Without limiting the generality of the foregoing, the Undersigned will not assert, plead or enforce against Lender any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any indebtedness, or any setoff available against Lender to Borrower or any

4

virtually identical to the waiver clauses in *HWA Properties*, supra, 322 Ga. App. at 885-887 (2) (b), which the Supreme Court cited with approval in *PNC Bank.* Consequently, Bank of the Ozarks could pursue this action against the Rays, even though it failed to seek confirmation of the foreclosure sales.

3. *Damages*.

The Rays argue that the trial court erred in calculating damages as the difference between the proceeds of the foreclosure sales and the amounts due under the notes. Instead, they argue, the court should have entered judgment in the amount of the difference between the fair market value of the properties securing the loans and the amounts due under the notes. We disagree.

One of the issues a trial court decides in a confirmation proceeding is the fair market value of the property sold at foreclosure. See *Ciuperca v. RES-GA Seven,*

---

such other person, whether or not on account of a related transaction. *The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The undersigned shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though the Borrower's obligations had not been discharged."*

(Emphasis added).

5

*LLC*, 319 Ga. App. 61 (735 SE2d 107) (2012). But, as detailed above, the Rays waived any right to insist upon confirmation of the fair market value of the properties. Therefore, the bank was authorized "to collect the difference between the amount due on the note and the foreclosure sale proceeds from [the Rays] based upon their personal guaranties." *Community & Southern Bank v. DCB Investments, LLC*, 328 Ga. App. 605, 614 (2) (2014) (citation and punctuation omitted).

The Rays argue that the duty of good faith and fair dealing required the bank to credit their indebtedness with the fair market value of the properties rather than the amount actually received at the foreclosure sales. "Generally speaking, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. But there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." *Martin v. Hamilton State Bank*, 314 Ga. App. 334, 335 (723 SE2d 726) (2012) (punctuation, citations, and footnote omitted). Here, in the guaranties the Rays agreed that they would be liable "for any deficiency remaining after foreclosure" and that their liability would not be affected by "any foreclosure . . . of any collateral security."

To condition the Rays' liability upon a determination of the properties' fair market values would be inconsistent with these contractual provisions.

*Judgment affirmed. Miller, P. J., concurs. McMillian, J., concurs in the judgment only.*

7